THE MORRIS PLAN COMPANY OF BINGHAMTON, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53221.   Promulgated August 5, 1932.

*John Marcy, Jr., Esq.*, for the petitioner.
*O. W. Swecker, Esq.*, for the respondent.

OPINION.

TRAMMELL: Counsel for the petitioner contends in his brief that the amount of $52,000 advanced to the petitioner by the Morris Plan Company of New York and the contributing stockholders of the petitioner constituted an indebtedness owing by the petitioner to them, and that the amount of $3,120 declared by the petitioner as a dividend during each of the taxable years and paid to the trustees, who in turn distributed it to the parties who had advanced the $52,000 to the petitioner, constituted interest paid by the petitioner on its indebtedness. The respondent contends that the transaction was in substance one whereby all of the stockholders of the petitioner borrowed $52,000 from 13 of their number, designated contributing stockholders, and the Morris Plan Company of New York, pledging with trustees as collateral for the payment thereof their stock in the petitioner, and that, having thus raised $52,000, they contributed it to the capital of the petitioner without any obligation for repayment being assumed by the petitioner. He urges that under such circumstances dividends thereafter declared by the petitioner out of its earnings and paid to the trustees who were holding its outstanding capital stock may not be deducted by the petitioner as interest paid on its indebtedness.

From a consideration of the terms of the agreement and the other facts in the case we think it is clear that the contributing stockholders of the petitioner and the Morris Plan Company of New York were to be repaid the amounts advanced by them to the petitioner first from the dividends or distributions of the earnings and profits of the petitioner as distributed by it to the trustees from time to time. If at the end of six years such distributions had been insufficient for that purpose, then payment was to be had from the stockholders of the petitioner, or, in the event they failed to pay within 15 days from the time demand was made upon them, then payment was to be had from the sale of the stock deposited with the trustees. We think it is equally clear that at the time the $52,000 was paid in to the petitioner it assumed no obligation with respect to the repayment thereof. There is nothing in the record to indicate that

it was in any way liable to repay the amount either to the parties who actually paid the money over to it or to its stockholders. The testimony of the petitioner's counsel, who was a witness in the case, indicates that if the petitioner, being insolvent as it was, had assumed such liability it would still have been subject to being closed by the banking authorities of New York State. The whole purpose of the stockholders in having the $52,000 paid in to the petitioner was to "rehabilitate the capital" and restore the petitioner to solvency. This certainly could not have been done if the petitioner had been liable for repayment of the amount, as it would have been just as insolvent after the amount was paid in as it was before.

The fact that the petitioner during the taxable years declared dividends in an amount exactly equal to 6 per cent on $52,000 and paid such dividends to the trustees does not establish that the petitioner was liable for the payment of the amount advanced to it. So far as the record shows, the petitioner's earnings, after making provision for the reserves required by the superintendent of banks of the State of New York as referred to in the agreement, might have been insufficient to pay larger dividends. Or, if the earnings would have permitted the payment of larger dividends, it might have been that for business reasons the directors of the petitioner did not deem it advisable to make larger payments than were made. Since the stockholders of the petitioner had deposited their stock with the trustees, had specifically assigned and transferred to the trustees all dividends on the stock, and had authorized the trustees to collect and receive any and all dividends declared on the stock so deposited and to distribute them to the parties who had actually furnished the $52,000, it was the only proper thing for the petitioner to do to pay to the trustees the dividends declared. Having thus received the dividends, it was incumbent on the trustees under the agreement to pay them over to the contributing stockholders and the Morris Plan Company of New York pursuant to the terms of the agreement.

In order for a taxpayer to be allowed a deduction for interest paid the interest must have been paid on an obligation of the taxpayer claiming it, and not on an obligation of another or others. *Ohio Valley Tie Co.*, 3 B. T. A. 339; *Continental Trust Co. et al.*, 7 B. T. A. 539; *William Ainslie Colston*, 21 B. T. A. 396; affd., 59 Fed. (2d) 867.

If it be conceded, for the sake of argument, that the amounts the petitioner here seeks to deduct were in fact paid as interest on the $52,000, they would not be deductible by the petitioner, since they were not paid on its obligation, but on an obligation of its stockholders. The evidence, however, shows that the amounts in controversy were declared and paid as dividends by the petitioner and

appear as such in its records. The respondent has determined that they were dividends, and the evidence before us does not indicate that they were anything else. Therefore, we think that the respondent's action in disallowing the amounts as deductions was correct and should be sustained.

*Judgment will be entered for the respondent.*